# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| REJENNA CHAVEZ, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>GRACO CHILDREN'S PRODUCTS, INC. and NEWELL BRANDS DTC, INC.,<br><br>     Defendants. | Civil Action No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Rejenna Chavez ("Plaintiff"), on behalf of herself and all others similarly situated, brings this action for violations of state consumer statutes and the common law against Graco Children's Products, Inc. and Newell Brands DTC, Inc. (collectively, "Defendants" or "Graco") for their misleading marketing of, and sale of, poorly-designed, mislabeled, and defective booster seats to the Plaintiff and other consumers.

Plaintiff's allegations are based upon personal knowledge as to herself and her own actions, and upon information and belief as to all other matters, which are based upon, among other things, the investigation of counsel.

## NATURE OF THE ACTION

1.     Graco manufactures and markets children's products, including infant car seats, booster seats, infant strollers, portable play yards, swings, activity centers, highchairs, and other indoor and outdoor infant products.

2.     This case concerns Graco's TurboBooster Highback Car Seat and Graco's AFFIX Youth Booster Seat (together "Booster Seats"), which are high back booster seats that Graco has marketed as safe for children who weigh as little as 30 pounds.

3.     However, as alleged below, Graco has known since as early as 2002 that the Booster Seats are not safe for any child weighing less than 40 pounds. Since 1987, Canada has not allowed the sale of boosters for use with children under 40 pounds. And, nearly a decade ago, the National Highway Traffic Safety Administration ("NHTSA") warned against using any booster seat for any child weighing less than 40 pounds, noting that such use can endanger those children. Instead, parents should continue to use child seats that have an internal five-point harness.

4.    The recommended safe practice is for parents to continue to put their children in forward-facing child seats until the child reaches the height and weight limit of that seat.

5.    But, Graco wanted to increase its sales and market share for booster seats and thus falsely claimed parents can safely transition their children to Graco Booster Seats once they reach 30 pounds, even though scientific and crash test evidence proves that to be extremely risky and unsafe.

6.    Graco also holds out its Booster Seats as providing substantial side-impact safety in accordance with claimed "rigorous" side-impact testing. But, in reality, the Booster Seats provide no appreciable side-impact protection and instead are extremely dangerous for their advertised use. Additionally, Graco's misrepresentations misleadingly suggest there are uniform side impact testing standards for booster seats and that Graco's Booster Seats pass those standards. In reality, there are no such standards and Graco is saying nothing more than the Booster Seats pass whatever arbitrary and undisclosed internal tests Graco has conjured for itself.

7.    A recent investigation by ProPublica shed light on how inadequately Graco's Booster Seats protect children from side impacts, as well as for children,

generally, who weigh less than 40 pounds. ProPublica's side impact testing on Graco's Booster Seats demonstrated that such impacts could lead to serious injuries – and even death - in the event of a side-impact crash.[1]

8.    Yet Graco continue to market its Booster Seats as "SIDE IMPACT TESTED," and safe for children weighing less than 40 pounds, placing children in serious threat of physical harm.

9.    Defendants' marketing of its Booster Seats as safe for children weighing less than 40 pounds and providing protection against side-impact accidents is dangerously false and misleading, as the product is not safe for children weighing under 40 pounds and does not provide appreciable safety to children from side-impacts.

10.    The Booster Seats are inherently unsafe and unfit for their advertised and intended use.  Use of the Booster Seats poses serious safety risks that has led to many documented injuries of children who were seated in Graco's Booster Seats in side-impact crashes.

---

[1] Daniela Porat, Patricia Callahan, *Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety,* ProPublica (Feb. 6, 2020), https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.

11.    Graco is also no stranger to litigation over its defective car seats. In 2015, Graco agreed to pay $10 million to settle claims that it failed to promptly recall about four million child car seats with defective buckles. That included a $3 million fine to NHTSA and $7 million to develop safety programs.[2]

## PARTIES

12.    Plaintiff Rejenna Chavez is and was, at all times relevant hereto, a citizen and resident of the state of Georgia. Chavez purchased Graco's TurboBooster Seat for her grandchild on or around December 12, 2019.

13.    Defendant Graco Children's Product, Inc. is a Delaware Corporation with its principal place of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328.   Graco Children's Products is a wholly-owned subsidiary of Defendants Newell Brands DTC, Inc.

14.    Defendant Newell Brands DTC, Inc. is a Delaware corporation with it principal place of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. Baby Gear and infant care products are sold under the Graco product line.

## JURISDICTION AND VENUE

15.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as

---

[2] https://www.nytimes.com/2015/03/21/business/graco-to-pay-10-million-for-delay-in-recall-of-defective-child-seats.html?_r=0

this class action alleges a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. This Court also has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants.

16.    The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.    The Court has personal jurisdiction over Defendants because they are headquartered in this District, have regular and systematic contacts with this District, and place their products into the stream of commerce from this District.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendants maintain their headquarters in this District.

## FACTUAL ALLEGATIONS

11.    Graco is a baby products company based in Atlanta, Georgia. Graco is owned and operated by Newell Brands. Graco is one of the leading manufacturers and marketers of infant and juvenile products, including the Booster Seats.  Graco sells its products through national retail stores such as

Walmart and Target, as well as online via Amazon and direct-to-consumer through its website Gracobaby.com.

12.     Children's car safety seats are generally grouped around three basic designs that follow a child's growing height and weight: rear-facing seats, forward-facing seats with harnesses, and belt-positioning booster seats. Rear-facing seats provide the most protection and are designed for infants and children under 2 years old. They are designed to support the head, neck, and spine of developing infants. Forward-facing seats are for children who have outgrown rear-facing only seats and usually have a five-point belt system designed to provide maximum restraint. Booster seats are designed for children who have outgrown the weight or height limit of their forward-facing seat and elevate the child's seated position while allowing use of the car's regular seatbelts.

13.     Each move up—from rear-facing to front-facing and from front-facing to booster—as the child gets older provides less complete protection, with the theory being that as the child gets older and stronger, he or she is more able to withstand normal crash forces without full restraint. But this also means it is imperative to keep the child in the lower level child seat until the child has fully outgrown it.

14.    Graco's TurboBooster Seat and Graco's AFFIX Youth Booster models are belt-positioning booster car seats, and are used to elevate children sitting in automobiles so that they can use the vehicle's seat belt system.  Graco produces a variety of styles of the TurboBooster Seat and the AFFIX including the TurboBooster LX model and the AFFIX Atomic model.  Graco marketed these high back booster seats as safe for use by children as light as 30 pounds despite knowing that these Booster Seats are not safe for children weighing under 40 pounds. Graco also marketed its Booster Seats as "Side-Impact Tested," despite the absence of any federal or state side-impact testing standards, and despite the Booster Seats failing to provide appreciable safety from side impacts.

 

**AFFIX**                                    **TurboBooster**

15.    Defendants' Booster Seats are inherently unsafe as a child booster car seat and unfit for their intended use. They pose serious safety risks that have led to many documented injuries of children who were seated in them.

16.    Graco has faced lawsuits by the families of children who have been injured or killed in accidents while in one of Graco's Booster Seats. For example, the parents of a child who weighed 32 pounds and was rendered a quadriplegic while

riding in a Graco TurboBooster seat sued Graco, alleging Graco knew that its Booster Seats were not safe for children under 40 pounds because they are too small to be protected.[3]

17.    The child's attorneys had a side-impact test performed on a Graco TurboBooster, which resulted in the child-sized dummy in the Graco booster seat being thrown out of the shoulder belt.[4]  Graco did not respond to questions about the test after ProPublica shared the data and video from the test.[5]

## A. Graco Falsely Marketed its Booster Seats as Safe for Children Weighing Less than 40 Pounds

18.    The American Academy of Pediatrics' ("AAP") best practices for optimizing passenger safety provide that:

- Infants and toddlers should ride in a rear-facing car safety seat as long as possible, until they reach the highest weight or height allowed by their seat. Most convertible seats have limits that will allow children to ride rear-facing for 2 years or more.

- Once they are facing forward, children should use a forward-facing car safety seat with a harness for as long as possible, until they reach the height and weight limits for their seats. Many seats can accommodate children up to 65 pounds or more.

- When children exceed these limits, they should use a belt-positioning booster seat until the vehicle's lap and shoulder seat

---

[3] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.
[4] *Id.*
[5] *Id.*

belt fits properly. This is often when they have reached at least 4 feet 9 inches in height and are 8 to 12 years old.[6]

19.    The AAP has long explained that parents should not move children from a harnessed seat to a booster seat *until they reach the maximum weight* or height of their harnessed seat.

20.    Since the early 2000s, the AAP has explained that car seats with an internal harness provide the best protection for children who weigh 40 pounds or less. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch. Some internal harnessed car seats can fit children up to 85 pounds.

21.    Scientific consensus confirms that booster seats fail to protect toddlers adequately. An adult seat belt must remain across the middle of the occupant's shoulder and thighs to obtain the full safety benefit in a crash. Even if young children are tall enough for a belt to reach their shoulders, they tend to slide out of position, losing safety protection.

22.    By contrast, a tightly adjusted five-point harness goes between the child's legs and secures her shoulders and hips. By securing a child's body, a five-

---

[6] https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Updates-Recommendations-on-Car-Seats- for-Children.aspx.

point harness disperses the force of a crash over a wider area and makes it less likely for the child to be ejected in a crash.

23.    In 2010, NHTSA issued a report reiterating that "[f]orward- facing (convertible or combination) child seats are recommended for children age 1 to 4, **or until they reach 40 lbs**" and finding that "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[7]

24.    And in 2011, the AAP revised its 1989 Policy Statement regarding booster seat use. In the revised Policy Statement, the AAP issued a "best practice recommendation" that, for children 2 to 8 years of age, children should remain in "convertible" or "combination" child safety seats (using integrated harnesses) so long as their weight was less than the limit for the seats. The AAP specifically recommended that children remain in harnessed seats "as long as possible," at least until they weigh 65 pounds, and in some cases 85 pounds.

25.    Likewise, Consumer Reports states that "If you are using any booster seat, and your child weighs less than 40 pounds and is younger than 4 years old, [Consumer Reports] recommends that you return your child to a forward-facing

---

[7] https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (emphasis added).

harness seat."[8]

26.    Part of the reasoning behind these recommendations is that the average age for a 30-pound child is two and a half years, and a large child in the 95th percentile for weight can easily approach 30 pounds. The ages are far too young for children to be sitting in booster seats. By contrast, an average 40-pound child is closer to five years old.[9]

27.    However, even *after* the AAP made clear that children who weigh 40 pounds or less were best protected by harnessed seats, Graco labeled and marketed the Booster Seats in the United States as able to "safely transport" children as light as 30 pounds. Graco simply ignored the overwhelming evidence that the Booster Seats were not safe for children under 40 pounds.[10]  Instead, Graco represented to consumers that their particular Booster Seats *were* safe for children under 40 pounds.

28.    Graco did not change the minimum weight requirement of 30 pounds to 40 pounds until very recently. Although certain Graco Booster Seats sold on

---

[8] https://www.consumerreports.org/booster-seats/when-is-the-right-time-for-a-booster-seat/.

[9] https://www.consumerreports.org/cro/news/2013/04/minimum-weight-limits-on-some-booster-seats-may-put-a-child-at-risk/index.htm.

[10] https://web.archive.org/web/20191016231356/http://www.gracobaby.com/en-US/belt-positioning-booster/turbobooster-lx-highback-seat-with-latch-system-103557.

Walmart, Amazon and Target websites include the following update, "To continue to meet industry standards, we have increased the weight minimum from 30 to 40 lb," Graco continues to market its boosters to children who weigh as little as 30 pounds.

29.    For example, Graco's product page on BestBuy.com for its TurboBooster Highback Booster Car Seat still promotes a 30-pound minimum weight recommendation:[11]



---

[11] https://www.bestbuy.com/site/graco-turbobooster-highback-booster-car-seat-glacier/6347577.p?skuId=6347577 (last visited August 7, 2020).

**Convertible car seat**
Features two modes of use: high-back mode for children 30-100 lbs. and backless mode for children 40-100 lbs.

30.    Graco similarly still provides a 30-pound minimum on its Best Buy product page for its AFFIX Youth Booster Car Seat,[12] and on its Amazon product page for its Highback TurboBooster.[13]

31.    Graco has long been fully aware that its Booster Seats are not safe for children weighing less than 40 pounds. The Canadian iteration of its Graco's manual for the Booster Seats expressly warns users that, "FAILURE TO USE booster seat in a manner appropriate for your child's size may increase the risk of serious injury or death." Among the requirements for use of Graco's Booster Seats is a weight minimum of 40 pounds.[14]

---

[12] https://www.bestbuy.com/site/graco-affix-youth-booster-car-seat-atomic/6347582.p?skuId=6347582 (last visited August 7, 2020).
[13] https://www.amazon.com/Graco-Highback-TurboBooster-Seat-Alma/dp/B01N94DDVG?th=1 (last visited August 7, 2020).
[14]https://www.gracobaby.ca/html/common/manuals/PD220791E%20TurboBooster%20Eng.pdf.

**Weight and Height Limits**

**⚠ WARNING**

FAILURE TO USE booster seat in a manner appropriate for your child's size may increase the risk of serious injury or death.



To use this Graco booster seat, your child MUST meet ALL of the following requirements:

**(approximately 4 to 10 years old):**

- weigh between 18 and 45 kg (mass between 40 and 100 lbs), and

- are between 101 and 145 cm (40 and 57 inches) in height, and

- the shoulder belt MUST lie across child's shoulders in red zone as shown in ❶ or ❷ and the lap portion is positioned low on the childs hips, and (see next page)

32.    Despite the consensus among experts and its own knowledge of the safety risks of placing children under 40 pounds in a booster seat, Graco nevertheless continues to market its Booster Seats in the United States as safe for children weighing 30 pounds to 100 pounds.

**B. Graco Falsely Markets its Booster Seats as Protecting Children from Side Impacts**

33.    Graco also falsely represents to consumers that its Booster Seats offer protection to children in the event of side-impact crashes. Graco claims "[t]his seat

is Graco ProtectPlus Engineered to help protect your child in frontal, *side*, rear & rollover crashes."[15] Graco's Booster Seats also have tags that prominently state: "SIDE IMPACT TESTED."



34.     In addition, Graco misleadingly represents on its website that its products are thoroughly tested and safe.  For example, Graco's "Safety Information & Guidelines" claim:

> Our number one priority is safety for the children who depend on our products every day. And, nowhere is safety more important than in the car. While specific and rigid government safety requirements guide the design and production of every car seat we make, we, at Graco, take extra steps to meet or exceed those standards to help protect your little one.

35.     Graco touts its "ProtectPlus Engineered" testing as a "combination of the most rigorous crash tests that help to protect your little one in frontal, side, rear & rollover crashes, and additional testing based on the New Car Assessment

---

[15] https://www.gracobaby.com/en-US/belt-positioning-booster/highback-turbobooster-car-seat-103519 (emphasis added).

Program and for extreme car interior temperatures." Graco also claims the following with respect to this testing: "In addition to meeting or exceeding all applicable US safety standards, this car seat has been side-impact tested for occupant retention with the built in 5-point harness system and in the highback belt-positioning modes."[16]

36.    Graco further states that its testing "[m]eets or exceeds NHTSA's Federal Motor Vehicle Safety Standard (FMVSS) 213 which is NHTSA's standard for child car seats.[17]

37.    But Graco's deceptive marketing fails to disclose to consumers that its Side Impact testing is merely a marketing gimmick and not intended to test whether a child would be protected in a side-impact crash from injury, including from serious injury or death. There are no federal or state side-impact testing rules or standards, so its statements that its testing, including side-impact safety testing, meets or surpasses FMVSS 213 is patently false. In fact, Graco itself admits on its website that, "there are currently no side impact safety standards in the US.[18]

---

[16] *Id.*
[17] *Id.*
[18] https://www.gracobaby.com/en-US/safety?storeId=65051&catalogId=65051 (last visited August 8, 2020).

38.    Graco further misleads consumers by describing its Booster Seats as equipped with "EPS," or "energy absorbing foam." Graco promotes EPS as a "key feature," which adds additional safety to children from side-impact collisions.

39.    The "EPS" in Graco's Booster Seats is actually nothing more than Styrofoam. But by calling it "EPS," Graco implies it is some kind of special protective material and misleads consumers into believing that their children will be safe in the event of a side-impact collision.

40.    When asked for comments by ProPublica, Graco declined to provide test videos or even the basic details of how their side-impact tests are performed. A Graco spokeswoman only stated that the company is "committed to child safety."[19]

41.    ProPublica's exposé included short, repeating videos showing side-impact testing on booster seats. Although Graco competitor Evenflo's booster seat was the product tested in the videos, still photos of those video nevertheless offer a glimpse of how inadequately children are protected by such vehicle crashes:

---

[19] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.



42.    Graco's side-impact safety testing lulls consumers into falsely believing that their children are protected in the event of a side-impact crash. And the threat of side-impact crashes cannot be overstated: More than a quarter of deaths of children under 15 in vehicle collisions in 2018 came as a result of side-impact crashes.[20]

### PLAINTIFF'S FACTS

43.    On or around December 12, 2019, Plaintiff Chavez purchased a Graco TurboBooster Seat for her grandchild from Amazon.com.

44.    Chavez purchased the Booster Seat believing that it would be safe for her grandchild and would provide adequate side-impact safety protection in the event of a side-impact collision and for children weighing under 40 pounds.

---

[20] *Id.*

45.    Had Chavez known that the Booster Seat was not safe for her grandchild, she would not have purchased the Booster Seat, and would have instead purchased a safer alternative.

46.    On or about August 10, 2020, Plaintiff's counsel sent notice to Graco concerning its wrongful conduct as alleged herein by Plaintiff and the Class members and, in the event the relief requested is not provided by Defendant, Plaintiff intends to amend the complaint to add a claim under the Georgia Fair Business Practices Act.  In addition, Graco has already been placed on notice of the claims herein as of the date of the first filed lawsuit and has resisted any prompt or fair resolution with consumers/class members.

## CLASS ACTION ALLEGATIONS

47.    Pursuant to Federal Rule of Civil Procedure 23(a), including subsections (b)(2), (b)(3), and (c)(4), Plaintiff Chavez, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and on behalf of the proposed Classes:

### A. The Nationwide Class

48.    Plaintiff seeks to represent a proposed Nationwide Class, defined as follows:

> All persons who purchased a Booster Seat in the United States for
> personal use and not for resale from 2009 to present.

## B. The Georgia Class

49.    Plaintiff seeks to represent a proposed subclass comprised of Georgia

residents (the "Georgia Subclass"), defined as follows:

> All persons who purchased a Booster Seat in the State of Georgia for
> personal use and not for resale from 2009 to present.

50.    Excluded from the Classes are Defendants and any entities in which

Defendants or their parents, subsidiaries or affiliates have a controlling interest, and

Defendants' officers, agents, and employees. Also excluded from the Classes are the

judge assigned to this action, members of the judge's staff, and any member of the

judge's immediate family. Plaintiff reserves the right to amend the Class definitions

if discovery and further investigation reveal that the Class should be expanded or

otherwise modified.

51.    **Numerosity**: The members of each Class are so numerous that joinder

of all members of any Class would be impracticable. Plaintiff reasonably believes

that members of each of the Classes total well over 1,000 persons. The names and

addresses of Class members are identifiable through, among other things, documents

maintained by Defendants.

52.    **Commonality and Predominance**: This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

a.  Whether Defendants' Booster Seats are unsafe for child occupants weighing less than 40 pounds;

b.  Whether Defendants owed a duty of care to Plaintiff and members of the Classes;

c.  Whether Defendants were negligent or grossly negligent in representing that the Booster Seats were safe for child occupants weighing less than 40 pounds;

d.  Whether Defendants were negligent or grossly negligent in representing the Booster Seats were side-impact tested and safe;

e.  Whether Defendants represented through advertising, marketing, and labeling that the Booster Seats were safe for child occupants weighing less than 40 pounds and/or safe in a side-impact crash;

f.  Whether the representations and/or omissions Defendants made through its advertising, marketing, and labeling are false, misleading, or deceptive;

g.  Whether Defendants' representations and/or omissions in advertising, marketing, and labeling are likely to mislead a reasonable consumer;

h.  Whether Defendants had knowledge that its representations and/or omissions in advertising, marketing, and labeling were false, deceptive, or misleading;

i.  Whether Defendants engaged in unlawful, fraudulent, or unfair business practices;

j.  Whether Defendants violated statutes and/or common law as described herein;

k.  Whether Plaintiff and the other Class members are entitled to damages; and

l.  Whether Plaintiff and the other Class members are entitled to declaratory or injunctive relief.

53.    Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

54.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct by Defendants. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and of other Class members arise from the same operative facts and are based on the same legal theories.

55.    **Adequacy of Representation**: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

56.    **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against

Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

57.    Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

58.    Likewise, particular issues under Rule 23(c)(4) of the Federal Rules of Civil Procedure are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, those set forth in paragraph 52 above, which are incorporated by reference herein.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Continuing Act Tolling

59.     Beginning in 2009, Defendants continuously marketed and sold the dangerous Booster Seats to unsuspecting parents and caregivers.  They continuously represented these Booster Seats as safe for children weighing as little as 30 pounds and safe in a side impact crash.   By continuously repeating these false representations, and failing to disclose that the Booster Seats were inherently unsafe in a side impact crash for children of any weight and age and exposed children to great risk of injury and death, Defendants engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendants might seek to apply.

60.     Defendants' knowledge of the true inherent nature of the Booster Seats is evidenced by, among other things:  numerous complaints by consumers of injury and death; by warnings from the AAP and major consumer groups; by lawsuits against them for children's death and other injuries.

61.     Thus, at all relevant times, Defendants indisputably possessed continuous knowledge of the material dangers posed by the Booster Seats during a side impact crash, and, yet, they knowingly continued to aggressively market and sell the product as safe for children as small as 30 pounds and in the event of side-impact collisions. Plaintiff and other Class members' claims are not time barred.

**B. Fraudulent Concealment Tolling**

62.    Defendants had a duty to disclose to Plaintiff and the Class members the true quality and nature of the Booster Seats, that they were unsafe, and that the Booster Seats, at a minimum, pose safety concerns and are in fact dangerous to children weighing less than 40 pounds and in a side-impact collision.

63.    This duty arose, among other things, due to Defendants' overt representations that the Booster Seats were safe for children as small as 30 pounds and in side-impact collisions.

64.    Defendants have known at all relevant times of the risks that the Booster Seats posed to children weighing less than 40 pounds and in a side-impact collision.  Prior to selling the Booster Seats, Defendants knew or, but for their extreme recklessness, should have known that the Booster Seats posed a risk to children weighing less than 40 pounds and were not safe in a side-impact collision These facts cannot have been unknown to Defendants in the absence of extreme recklessness.

65.    Despite their knowledge of the defective design and danger of the product when used as intended, Defendants failed to disclose and concealed this material information from Plaintiff and other Class members, and instead they continued to market the Booster Seats as safe for children weighing under 40 pounds

and in side-impact collisions. Indeed, throughout the Class period, Defendants mislabeled the Booster Seats as "Side Impact Tested."

66.    The purpose of Defendants' concealment of the dangers of the Booster Seats was to continue to profit from the sale of the Booster Seats and to prevent Plaintiff and other Class members from seeking redress.

67.    Plaintiff and the other Class members justifiably relied on Defendants to disclose the true nature of the products they purchased and/or owned because the truth was not discoverable by Plaintiff and the other Class members through reasonable efforts.

68.    Any applicable statute of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**C. Discovery Rule Tolling**

69.    Plaintiff and other Class members, through the exercise of reasonable diligence, could not have discovered Defendants' wrongdoing. Defendants were concealing and misrepresenting the true nature of the Booster Seats and the safety risks in their use.

70.    Plaintiff and other Class members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable

person to suspect, that Defendants knowingly failed to disclose material information within their knowledge about the dangers of the Booster Seats to consumers in the U.S. and elsewhere.

71.    As such, no potentially relevant statute of limitations should be applied.

**D. Estoppel**

72.    Defendants were under a continuous duty to disclose to Plaintiff and other Class members the fact they knew that the Booster Seats were not safe for children weighing less than 40 pounds and were not safe in the event of a side-impact collision.

73.    Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Booster Seats from Plaintiff and other members of the Class.

74.    Thus, Defendants are estopped from relying on any statutes of limitations in defense of this action.

**<u>First Claim for Relief</u>**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq*.**
**(On Behalf of Plaintiff and the Nationwide Class)**

75.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 74 as though fully stated herein.

76.    Plaintiff brings this count on behalf of herself and members of the Nationwide Class.

77.    The sale of the Booster Seats was subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

78.    The Booster Seats are "consumer products" as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

79.    Plaintiff and the other Nationwide Class members are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

80.    Defendants are "suppliers" and "warrantors" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

81.    The Booster Seats' implied warranties are covered by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

82.    Defendants breached these warranties, as further described above, by not disclosing the true nature of the Booster Seats, and by providing the Booster Seats not in merchantable condition and not fit for the ordinary purpose for which they are used. They are also not fit for the specific purposes for which Defendants sold them and for which Class members purchased and/or owned them.

83.     Privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Defendants and those who sell their products; specifically, they are the intended beneficiaries of Defendants' express and implied warranties. The vendors were not intended to be the ultimate consumers of the Booster Seats and have no rights under the warranty agreements provided with the Booster Seats; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the Booster Seats are dangerous instrumentalities due to the unsafe nature for children weighing under 40 pounds and not safe in side-impact crashes.

84.     Requiring an informal dispute settlement procedure, or affording Defendants a reasonable opportunity to cure their breach of written warranties, is unnecessary and futile.

85.     Defendants knew, should have known, or were reckless in not knowing, of their misrepresentations concerning the Booster Seats, but nonetheless failed to rectify the situation and/or disclose the truth. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants

a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

86.    Plaintiff and the other Class members have been damaged as a result of the wrongful conduct complained of herein. Said conduct continues and the harm or risk of harm is ongoing.

87.    The amount in controversy exceeds the statutory minimums set forth at 15 U.S.C. § 2310(d)(3). Each Class member's individual claim is equal to or larger than $25 and the cumulative amount in controversy (excluding interest and costs) exceeds $50,000.

88.    As a result of Defendants' violations of the Magnuson-Moss Warranty Act and warranties with consumers, Plaintiff and the other members of the Class have been damaged in an amount to be determined at trial.

## Second Claim for Relief
## FRAUD BY CONCEALMENT
### (On Behalf of Plaintiff and the Nationwide Class and the Georgia Subclass)

89.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 74 as though fully stated herein.

90.    Plaintiff brings this count on behalf of herself and members of the Nationwide Class.

91.    Graco has a duty to disclose the truth regarding the safety of their Booster Seats for children weighing less than 40 pounds, as well as in side-impact collisions, because the safety of the Booster Seats has a direct impact on the health and safety of the children who occupy them.

92.    Graco knowingly, willfully, fraudulently, and/or recklessly omitted material facts concerning the safety of its Booster Seats, including, *inter alia*, omitting to disclose that: (1) its Booster Seats are not safe for children under 40 pounds; (2) there are no federal or state testing standards for side-impacts and Graco set its own standards; and (3) its Booster Seats fail to offer sufficient side-impact safety to child occupants.

93.    Graco's omissions of material facts were made to Plaintiff and members of the Nationwide Class when they purchased the Booster Seats.

94.    Graco intended that its omissions of material fact would deceive or mislead Plaintiff and members of the Nationwide class, and induce them to purchase its Booster Seat.

95.    Plaintiff and members of the Nationwide Class justifiably relied on Graco's omissions of material facts regarding the Booster Seats, as described above.

96.     Graco's omissions of material facts directly and proximately caused the damages suffered by Plaintiff and members of the Nationwide Class.

97.     As a result of Graco's omissions of material facts, Plaintiff and members of the Nationwide Class have been damaged in an amount to be proven at trial.

98.     Graco's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

99.     Because Graco's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

<u>**Third Claim for Relief**</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Ga. Code Ann., § 11-2-314**
**(On Behalf of Plaintiff and the Georgia Subclass)**

100.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 74 as though fully stated herein.

101.   Plaintiff brings this count on behalf of herself and members of the Georgia Subclass.

102.   "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Ga. Code Ann. § 11-2-314(1).

103.   The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, were not safe in a side impact crash and was defectively designed or suffered from an inherent defect, rendering the Booster Seats unfit for its intended use and purpose. This defect substantially impairs the use, value and safety of the Booster Seats.

104.   Defendants are and were at all relevant times a "person" with respect to the Booster Seats, Ga. Code Ann. § 11-1-201(b)(27), and a "merchant" of the Booster Seats, Ga. Code Ann. § 11-2-104(1).

105.   Plaintiff and all Georgia Subclass members who purchased a Booster Seat are "consumers" within the meaning of Ga. Code Ann. § 11-1-201(b)(11).

106.   The Booster Seats were at all relevant times "goods" within the meaning of Ga. Code Ann. § 11-2-105(1).

107.   As set forth above, Plaintiff has standing to pursue this claim as she has suffered injury in fact and has lost money or property as a result of Defendants' actions.

108.   Defendants breached the warranty implied because the Booster Seats do not "pass without objection in the trade under the contract description;" are not "fit for the ordinary purposes for which such goods are used;" and do not "[c]onform to the promises or affirmations of fact made on the container or label." *See* Ga. Code

Ann. § 11-2-314(2)(a), (c), and (f). As a result, Plaintiff and Class members did not receive the goods as impliedly represented by Defendants to be merchantable.

109.   Defendants breached the implied warranty of merchantability because the Booster Seats were not safe in a side impact crash and was defectively designed or suffered from an inherent defect, rendering the Booster Seats unfit for its intended use and purpose. This defect substantially impairs the use, value and safety of the Booster Seats.

110.   Defendants misled consumers into believing that the Booster Seats were safe for use.  Defendants took advantage of Plaintiff's and Class members' trust and confidence in its brand, and deceptively sold the Booster Seats, knowing that it could cause serious injury and even death.

111.   Defendants' intended beneficiaries of these implied warranties were ultimately Plaintiff and the Class, not distributors who sold the Booster Seats. Moreover, Defendants exercises substantial control over which outlets can carry and sell the Booster Seats, which are the same place that Plaintiff purchased them. In addition, Defendants' warranties are in no way designed to apply to the distributors that purchase the Booster Seats in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendants knows, prior to making any purchasing decisions. As a result,

these warranties are specifically designed to benefit the individual consumer who purchased the Booster Seats.

112.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendants' breaches in that they would not have purchased the Booster Seats if they knew the truth about the Booster Seats and that product they received was worth substantially less than the product they were promised and expected.

113.    Accordingly, Plaintiff is entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

### Fourth Claim for Relief
### NEGLIGENT MISREPRESENTATION
**(On Behalf of Plaintiff and the Nationwide Class and the Georgia Subclass)**

114.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 74 as though fully stated herein.

115.    During the Class Period, Defendants consistently represented to the public in their websites, marketing materials, and packaging of the Booster Seat that the product was safe, thoroughly tested and its design provided a safety benefit in side-impact car crashes.

116.    Plaintiff relied on Defendants' misrepresentations in purchasing and using the Booster Seats.

117.   At the time of sale of each Booster Seat, Defendants should have known that these representations about the safety of the Booster Seat product were false.

118.   Defendants' representations that the Booster Seat was safe, thoroughly tested and its design provided a safety benefit in side-impact car crashes were material to the purchasing decisions of Plaintiff and the consuming public.

119.   Based on these representations of material fact, Defendants had a duty to disclose the truth about the safety characteristics of the Booster Seats and the lack of any federal side-impact testing standards.  Despite this duty, Defendants failed to exercise reasonable care or competence in communicating information regarding the testing design and safety of the Booster Seat.

120.   These misrepresentations were made uniformly to the consuming public, including the members of the Classes. Plaintiff and members of the Classes relied on Defendants' representations, and would not have purchased and/or owned a Booster Seat had Defendants made the representations about its design, safety and testing.

121.   As a result of Defendants' negligent misrepresentations concerning the Booster Seat, Plaintiff and members of the Classes have been damaged.

122.   Plaintiff and members of the Classes have also been harmed by the same negligent misrepresentations because they were induced to purchase and/or own a product unfit for its intended use and therefore without value.

**Fifth Claim for Relief**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and the Georgia**
**Subclass)**

123.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 74 as though fully stated herein.

124.   Defendants have accepted and enjoyed the benefits of Plaintiff and Class members purchasing or causing the purchase the TurboBooster Seat.

125.   Defendants should not be able to retain the benefit of the funds paid because the members of the Classes rendered payment with the expectation that the Booster Seat would be as represented and warranted – a well-designed product that was thoroughly tested and provided safety in a side-impact car crash.

126.   Defendants misrepresented and omitted material facts regarding the actual dangers posed by the flawed design of the Booster Seat, the meaningless side-impact testing of the Booster Seat, and the illusory protection provided by the Booster Seat in a side-impact car crash. Through those misrepresentations and

omissions, the Plaintiff and members of the Classes purchased the Booster Seat through which the Defendants profited.

127.   Equity dictates that Defendants' ill-gotten gains be disgorged, and that the Plaintiff and members of the Classes are entitled to restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes, respectfully requests that this Court enter an Order:

a.   Certifying the Nationwide Class and/or Georgia Subclass and appointing Plaintiff Chavez as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel under Rule 23 of the Federal Rules of Civil Procedure;

b.   A declaration that Defendants' failure to disclose the dangers of the Booster Seat was negligent, deceptive, unfair, and unlawful;

c.   Finding that Defendants' conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

d.   Finding that Defendants' conduct was in violation of the statutes and common law referenced herein;

e.      Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

f.      Awarding Plaintiff and the other Class members statutory damages and penalties, as allowed by law;

g.      Awarding Plaintiff and the other Class members restitution and disgorgement;

h.      Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest;

i.      Awarding Plaintiff and the other Class members reasonable attorneys' fees costs and expenses, and

j.      Granting such other relief as the Court deems just and proper.


## JURY TRIAL DEMANDED


Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED:  August 10, 2020                  Respectfully submitted,

                                         /s/ David J. Worley
                                         David J. Worley
                                         Georgia Bar No. 776665
                                         James M. Evangelista
                                         Georgia Bar No. 707807
                                         **EVANGELISTA WORLEY, LLC**
                                         500 Sugar Mill Road
                                         Suite 245A
                                         Atlanta, GA
                                         Tel: (404) 205-8400
                                         david@ewlawllc.com
                                         jim@ewlawllc.com


                                         **ROBINS KAPLAN LLP**
                                         Stacey P. Slaughter (*PHV application
                                         forthcoming*)
                                         sslaughter@robinskaplan.com
                                         Michael Pacelli
                                         mpacelli@robinskaplan.com
                                         Austin Hurt
                                         ahurt@robinskaplan.com
                                         800 LaSalle Ave., Suite 2800
                                         Minneapolis, Minnesota 55409
                                         Telephone: (612) 349-8500
                                         Facsimile: (612) 339-4181


                                         Aaron Sheanin (*PHV application
                                         forthcoming*)
                                         asheanin@robinskaplan.com
                                         2440 W El Camino Real #100
                                         Mountain View, CA 94040
                                         Telephone: (650) 784-4040

Facsimile: (650) 784-4041


**TURKE & STRAUSS LLP**
Samuel J. Strauss
Sam@turkestrauss.com
613 Williamson Street
Suite 201
Madison, WI 53703
Telephone: 608 237 1775
Facsimile: 608 509 4423


*Attorneys for Plaintiff*